**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Lucas Carrillo Edilson, Hector Sagastume Cornel, and Ismar R. Ramirez, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> -v- <br><br> With Pride Air Conditioning & Heating Inc., Michael Dolan, *as an individual*, <br><br> Defendants. | 2:26-cv-01032 (NJC) (JMW) |

## <u>MEMORANDUM AND ORDER</u>

NUSRAT J. CHOUDHURY, United States District Judge:

On February 23, 2026, Plaintiffs Lucas Carillo Edilson, Hector Sagastume Cornel, and Ismar R. Ramirez initiated this putative collective action against their former employers, Defendant With Pride Air Conditioning & Heating Inc. and its owner and operator, Michael Dolan. (ECF No. 1.) Plaintiffs bring claims under the Fair Labor Standards Act of 1938 ("FLSA") and New York Labor Law ("NYLL") for unpaid overtime wages and under the NYLL for failure to provide wage notices and wage statements. (*Id.*)

On May 5, 2026, Defendants filed a motion to compel arbitration and stay litigation pending the conclusion of arbitration, or in the alternative, to dismiss Plaintiffs' NYLL claims and all claims asserted by Plaintiff Cornel. (Mot. to Compel, ECF No. 22.) Plaintiffs opposed, and Defendants filed a reply. (ECF Nos. 25, 27.)

On June 19, 2026, Defendants filed a motion for sanctions against Plaintiffs and their counsel. (ECF No. 34.) Plaintiffs opposed, and Defendants filed a reply. (ECF Nos. 37, 39.)

This Court referred both motions to Magistrate Judge James Wicks for a written report

and recommendation. (Elec. Order, May 15, 2026.) Judge Wicks held oral argument on both motions on July 8, 2026. (Min. Entry, July 8, 2026.)

On July 9, 2026, Judge Wicks issued a Report and Recommendation ("R&R") recommending that this Court grant Defendants' motion to compel arbitration and, in the alternative, grant in part and deny in part Defendants' partial motion to dismiss. (R&R at 3–17, ECF No. 42.) He also recommended that this Court deny Defendants' motion for sanctions. (*Id.* at 17–21.)

A copy of the R&R was provided to all counsel via ECF on July 8, 2025. (*See id.*) The R&R instructed that any objections must be submitted in writing to the Clerk of Court within fourteen (14) days of service of the R&R. (*Id.* at 21–22.) Consequently, the deadline to object to the R&R was July 23, 2026. The date for filing any objections has thus expired, and no party has filed an objection to the R&R.

In reviewing a report and recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If no objections are filed, a district court reviews a report and recommendation for clear error. *King v. Paradise Auto Sales I, Inc.*, No. 15-cv-1188, 2016 WL 4595991, at *1 (E.D.N.Y. Sept. 2, 2016) (citation omitted); *Covey v. Simonton,* 481 F. Supp. 2d 224, 226 (E.D.N.Y. 2007). Because no party has timely filed objections to the R&R, I may review the R&R for clear error. *King*, 2016 WL 4595991, at *1. Nevertheless, I reviewed the R&R de novo out of an abundance of caution.

Having reviewed the motion papers, the applicable law, and the R&R, I adopt the thorough and well-reasoned R&R's recommendation to grant Defendants' motion to compel arbitration with the modifications discussed below and adopt in full the R&R's recommendation

2

to deny Defendants' motion for sanctions.

## DISCUSSION

### I.    Motion to Compel Arbitration

I agree with Judge Wicks' recommendation to find that Plaintiffs' FLSA and NYLL claims fall within the scope of the Arbitration Agreement and that, accordingly, these claims must be resolved in arbitration. However, I disagree with the threshold recommendation to reject Plaintiffs' argument that the parties' Arbitration Agreement is unenforceable on the basis that "the parties . . . agreed to submit the question of arbitrability to the Arbitrator." (R&R at 6.) Although it is a close question, the Arbitration Agreement does not present clear and unmistakable evidence of the parties' intent to delegate to an arbitrator questions concerning whether the Arbitration Agreement is enforceable as to a particular dispute. Accordingly, the Court, not an arbitrator, must determine whether the Arbitration Agreement is enforceable as to Plaintiffs' claims.

Moving to that question, I fully adopt Judge Wicks' carefully reasoned recommendation to find that the Arbitration Agreement's fee-shifting provisions and provision shortening the limitations period for Plaintiffs' NYLL claims are not unconscionable. Although Defendants concede that the Arbitration Agreement's provision shortening the limitations period is unenforceable as to Plaintiffs' FLSA claims, the proper remedy is to preclude application of this provision to the FLSA claims—not to deem the entire agreement unenforceable. Accordingly, the arbitrator shall interpret the Arbitration Agreement's statute of limitations provision to apply

3

only to Plaintiffs' NYLL claims—not the FLSA claims.[1]

Finally, I also adopt in its entirety Judge Wicks' recommendation to find that Plaintiff Cornel demonstrated his consent to the Arbitration Agreement and is therefore bound by it.

### A.  Delegation Provision

It is well established that "[a]rbitration is 'a matter of contract,' and arbitrators have authority to resolve disputes 'only because the parties have agreed in advance to submit such grievances to arbitration.'" *1199 SEIU United Healthcare Workers E. v. Chinese-Am. Plan. Council Home Attendant Program*, ___ F.4th ___, No. 21-631, 2026 WL 1993408, at *18 (2d Cir. July 10, 2026) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)). "Thus, an arbitrator's authority 'is constrained foremost by [the] principle that a party cannot be forced to arbitrate any dispute that it has not obligated itself, by contract, to submit to arbitration.'" *Id*. Parties may not only contract to arbitrate certain categories of disputes, they may also "contract to have arbitrators (rather than a court) decide whether a particular dispute is to be arbitrated under the terms of the contract." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 316 (2d Cir. 2021). The Supreme Court has made clear that "an agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the [Federal Arbitration Act ("FAA")] operates on this additional arbitration agreement just as it does on any other." *Henry Schein, Inc. v. Archer &*

---

[1] In opposition to the motion to compel, Plaintiffs also argued that the Arbitration Agreement's waiver-of-claims provision is unenforceable as unconscionable. However, on reply, Defendants agreed to waive enforcement of that provision as to Plaintiffs' FLSA and NYLL claims. (ECF No. 25 at 8; ECF No. 27 at 3, n.3). Accordingly, I adopt the recommendation set forth in the R&R to dismiss as moot Plaintiffs' challenge to the Arbitration Agreement's waiver-of-claims provision. (R&R at 9 n.2).

4

*White Sales, Inc.*, 586 U.S. 63, 68 (2019) (internal quotation marks omitted); *see also DDK Hotels*, 6 F.4th at 316. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must [therefore] respect the parties' decision as embodied in the contract." *Henry Schein, Inc.*, 586 U.S. at 65.

Nevertheless, the Second Circuit has made clear that "'threshold questions of arbitrability,' such as whether the arbitration agreement applies to a particular dispute, 'presumptively should be resolved by the court and not referred to the arbitrator.'" *DDK Hotels*, 6 F.4th at 317. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is *clear and unmistakable evidence* that they did so." *1199 SEIU United Healthcare Workers E.*, 2026 WL 1993408, at *18 (citing *DDK Hotels*, 6 F.4th at 317) (emphasis added). As the Second Circuit has explained:

> This "clear and unmistakable evidence" requirement reflects a departure from the manner in which we treat silence or ambiguity when interpreting whether a particular merits-related dispute falls within the scope of an arbitration agreement. Where the question is whether a given dispute falls within the scope of the arbitration agreement (and is therefore arbitrable), "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Where, by contrast, the question is *who* should decide arbitrability, there is a presumption that the question should be resolved by the court.

*DDK Hotels*, 6 F.4th at 317 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995)). In discerning whether there is clear and unmistakable evidence that parties have demonstrated an intent to delegate disputes concerning arbitrability to an arbitrator, courts "apply ordinary state-law principles that govern the formation of contracts." *Id*. Thus, the text of the arbitration agreement is determinative. *Id*. However, when an arbitration agreement does not explicitly address whether a court or arbitrator will decide questions of arbitrability, "courts must look to other provisions of the agreements to see what contractual intention can be discerned

5

from them." *Id*. at 318.

"[A]n agreement's incorporation by reference of [the AAA Commercial Arbitration Rules], which 'explicitly empower an arbitrator to resolve questions of arbitrability,' is 'relevant in evaluating whether there is clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator.'" *1199 SEIU United Healthcare Workers E.*, 2026 WL 1993408, at *20 (quoting *DDK Hotels*, 6 F.4th at 318). "But, as [the Second Circuit] emphasized [in *DDK Hotels*], such a generic rule-incorporation provision does not *per se* qualify as clear and unmistakable evidence of the requisite intent: rather, 'context matters.'" *Id*. "Even where an arbitration agreement contains such a general rule-incorporation provision, it may elsewhere be 'narrow, vague, or contain exclusionary language suggesting that the parties consented to arbitrate only a limited subset of disputes.'" *Id*. "In such circumstances . . . the agreement's 'incorporation of rules that empower an arbitrator to decide issues of arbitrability, standing alone, does not suffice to establish the requisite clear and unmistakable inference of intent to arbitrate arbitrability.'" *Id*.

The R&R concludes that "[h]ere, the parties themselves agreed to submit the question of arbitrability to the Arbitrator," relying on what is referred to as the "delegation provision" of the Arbitration Agreement and a provision incorporating the AAA Commercial Arbitration Rules. (R&R at 7.) However, neither the plain text of the agreement nor its incorporation of the AAA Commercial Arbitration Rules demonstrates clear and unmistakable evidence that the parties intended to delegate to an arbitrator the determination of whether the Arbitration Agreement is enforceable as to a given dispute between the parties.

6

The delegation provision of the Arbitration Agreement provides:

Employee agrees that any controversy, claim, or dispute that Employee has **arising out of or relating to Employee's employment and/or separation of employment** shall be adjudicated exclusively by binding Arbitration.

(ECF No. 24-1 at 5 (emphasis added).) The plain text of this provision is broad, but it does not "express[] the intent to arbitrate *all aspects of all disputes*" as do provisions that, when coupled with the incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability, constitute clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator. *DDK Hotels*, 6 F.4th at 318–19. Moreover, although it is clear that Plaintiffs' FLSA and NYLL claims *themselves* arise out of or relate to their employment by Defendants, it is not clear that the parties' dispute about whether Plaintiffs' FLSA and NYLL claims are subject to compulsory arbitration arises out of or relates to their employment.

By contrast, in *Contec Corporation v. Remote Solution, Co., Ltd.*, an agreement demonstrated an intent to delegate arbitrability disputes to an arbitrator by explicitly providing that, "[i]n the event of *any controversy arising with respect to this Agreement*, both parties shall use its best efforts to resolve the controversy. In the event the parties are unable to arrive at a resolution, *such controversy shall be determined by arbitration . . . .*" 398 F.3d 205, 208 (2d Cir. 2005) (emphasis added). The agreement in *Shaw Group. Inc. v. Triplefine International Corporation* similarly provided that "*[a]ll disputes* between you and us *concerning or arising out of this Agreement* shall be referred to arbitration," which "clearly and unmistakably evidence[d] the parties' intent to arbitrate questions of arbitrability." 322 F.3d 115, 120, 125 (2d Cir. 2003) (emphasis added). The Supreme Court reached the same conclusion in *Rent-A-Center,*

7

*West, Inc. v. Jackson*, when interpreting a provision that explicitly provided that "[t]he Arbitrator . . . shall have exclusive authority to resolve *any dispute relating to the . . . enforceability . . . of this Agreement.*" 561 U.S. 63, 67 (2010) (emphasis added). Each of these cases involved far broader delegation provisions than the one at issue here, delegating to arbitration "all controversies," "all disputes," and "any dispute" relating to the enforceability of the arbitration agreement or arising out of the agreement, rather than selecting for arbitration only those disputes arising out of or relating to employment or separation of employment.

In concluding that the parties agreed to delegate arbitrability disputes to arbitration, Judge Wicks also relied on the Arbitration Agreement's incorporation of the AAA Commercial Arbitration Rules, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, validity or scope of the arbitration agreement." (R&R at 7 (citing Section 6.1 of ADR Systems, ADR Systems Commercial Arbitration Rules 11 (Effective January 25, 2023), https://www.adrsystems.com/wp-content/uploads/2023/01/Commercial-Arbitration-Rules.pdf.).) The Second Circuit has made clear that "[i]ncorporation of such rules into an arbitration agreement does not, *per se*, demonstrate clear and unmistakable evidence of the parties' intent to delegate threshold questions of arbitrability to the arbitrator where other aspects of the contract create ambiguity as to the parties' intent." *DDK Hotels*, 6 F.4th at 318; *see also 1199 SEIU United Healthcare Workers E.*, 2026 WL 1993408, at *20.

Here, such ambiguity exists for two reasons. First, for the reasons discussed above, the plain text of the delegation provision does not refer to disputes about the interpretation or scope of the Arbitration Agreement, much less make clear that such disputes are delegated to an

8

arbitrator for resolution. Second, other provisions of the Arbitration Agreement add to the ambiguity concerning whether the parties intended to delegate arbitrability questions to an arbitrator. The Arbitration Agreement provides:

> If any term or provision of this Agreement *is declared* illegal or unenforceable, such term or provision shall be reasonably modified by the Arbitrator to be enforceable. If not possible, said provision or term shall be null and void, but leaving the remainder of the Agreement in full force and effect.

(ECF No. 24-1 at 6 (emphasis added).) This provision uses the passive voice—"is declared"—to refer to the fact that a term or provision of the agreement may be declared illegal or unenforceable, without addressing whether such a declaration is made by a court or an arbitrator. While the provision clearly grants an arbitrator the authority to modify the Arbitration Agreement in the event such a declaration is made, it does not support a clear and unmistakable impression that the arbitrator has the authority to declare a term or provision of the Agreement illegal or unenforceable in the first place.

Therefore, although the record presents a close question, the Arbitration Agreement, understood in light of its plain text and incorporation of the AAA Commercial Arbitration Rules, does not show "clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *1199 SEIU United Healthcare Workers E.*, 2026 WL 1993408, at *20. Accordingly, the Court—and not an arbitrator—must determine whether any provisions within the Arbitration Agreement are unenforceable, as Plaintiffs assert.

### B.  <u>Validity of the Arbitration Agreement</u>

Turning to the question of whether Plaintiffs' claims are subject to binding arbitration, I adopt in its entirety Judge Wicks' thorough and careful recommendations as to the resolution of Plaintiffs' argument that the Arbitration Agreement is not enforceable due to unconscionability.

9

As a threshold matter, Judge Wicks correctly notes that Plaintiffs' unconscionability argument boils down to the position that the Arbitration Agreement's two fee-shifting provisions and provision shortening the limitations period for NYLL and FLSA claims to six months render the entire agreement unenforceable as to Plaintiffs' claims. (R&R at 9.) For the reasons explained in the R&R and as set forth below, Plaintiffs' argument is unpersuasive.

First, Plaintiffs have failed to marshal any evidence suggesting that either of the two fee-shifting provisions in the Arbitration Agreement are unconscionable. R&R at 9–10; *see also Jones v. Landry's, Inc.*, No. 1:23-cv-9920-GHW, 2025 WL 1527307 (S.D.N.Y. May 29, 2025) ("The question of whether [fee-shifting] provisions are unconscionable 'should focus on the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims."). Judge Wicks observed that one of the fee-shifting provisions in the Arbitration Agreement is entirely inapposite to this action as it applies only to actions initiated by the *employer*—whereas this case is initiated by *employees*. (R&R at 10.) Plaintiffs did not object to Judge Wicks' recommendation that the Court reject Plaintiffs' argument that the Arbitration Agreement is unenforceable as to Plaintiffs claims on the basis that the fee-shifting provisions are unconscionable.

Second, the Arbitration Agreement provision shortening the limitations period is enforceable as to Plaintiffs' NYLL claims. As Judge Wicks catalogued, several courts in this Circuit have enforced similar provisions, and Plaintiffs fail to point to any decision deeming such provisions unenforceable. *See* R&R at 9; *see, e.g., Keller v. About, Inc.*, No. 21-cv-228, 2021 WL 1783522, at *3 (S.D.N.Y. May 5, 2021) (collecting cases). Plaintiffs also declined to object

10

to Judge Wicks' recommendation that the limitations period is enforceable at to their NYLL claims.

Third, the Arbitration Agreement's statute of limitations provision is unenforceable with respect to Plaintiffs' FLSA claims, as Defendants concede. (*See* Mot. at 11; R&R at 8.) However, the proper remedy is to simply preclude application of this provision to the FLSA claims. As noted above, the agreement explicitly provides that:

> If any term or provision of this Agreement is declared illegal or unenforceable, such term or provision shall be reasonably modified by the Arbitrator to be enforceable. *If not possible, said provision or term shall be null and void, but leaving the remainder of the Agreement in full force and effect.*

(ECF No. 24-1 at 6 (emphasis added).) Because the limitations period for the FLSA claims cannot be shortened to six months, as Defendants concede, the arbitrator may nevertheless enforce the Arbitration Agreement as to Plaintiffs' FLSA claims without applying the limitations provision.

Accordingly, the Arbitration Agreement, as modified to render the statute of limitations provision null and void with respect to Plaintiffs' FLSA claims, is enforceable as to all of Plaintiffs' claims. Plaintiffs have made no other arguments to show that their claims against Defendants for unpaid overtime wages and for failure to provide wage notices and wage statements are not subject to compulsory arbitration. Therefore, the parties must proceed in arbitration with respect to all claims.

## C. **Other Findings**

I also adopt in full Judge Wicks' carefully reasoned recommendation that I find that the Arbitration Agreement applies to Plaintiff Cornel in light of his demonstrated consent to the agreement. (R&R at 10–12.) Further, I adopt Judge Wicks' alternative recommended ruling that,

11

in the event that Plaintiffs' FLSA and NYLL claims are not subject to compulsory arbitration, Defendants' partial Motion to Dismiss is granted in part and denied in part for the reasons stated in the R&R. (R&R at 10–17.)

## II.    Motion for Sanctions

Finally, I deny Defendants' motion for sanctions for the reasons explained in the R&R. (R&R at 17–21.) Plaintiffs made colorable arguments, including the argument that this Court— and not an arbitrator—must determine whether the Arbitration Agreement is enforceable as to Plaintiffs' claims. Moreover, Plaintiffs also correctly argue that the Arbitration Agreement's statute of limitations provision is not enforceable against Plaintiffs' FLSA claims—a point that Defendants concede.

## CONCLUSION

Accordingly, Defendants' motion to compel arbitration is granted. (ECF No. 22.) Defendants' motion for sanctions under Rule 11 is denied. (ECF No. 34.)

Dated: Central Islip, New York
       August 7, 2026

                                        /s/ Nusrat J. Choudhury
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
LUCAS CARRILLO EDILSON,
HECTOR SAGASTUME CORNEL and
ISMAR R. RAMIREZ,
*individually and on behalf of all others similarly situated,*

                             *Plaintiffs,*


                    -against-


WITH PRIDE AIR CONDITIONING & HEATING INC.
and MICHAEL DOLAN,

                         *Defendants.*
--------------------------------------------------------------------X

**FILED**
**CLERK**

**7/9/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**REPORT AND**
<u>**RECOMMENDATION**</u>

2:26-cv-01032 (NJC) (JMW)

**A P P E A R A N C E S:**

        James Patrick Peter O'Donnell
        Katelyn Marie Schillaci
        Roman M. Avshalumov
        **Helen F. Dalton & Associates**
        80-02 Kew Gardens Road, Suite 601
        Kew Gardens, NY 11415
        *Attorneys for Plaintiffs*

        Jamie Scott Felsen
        **Milman Labuda Law Group PLLC**
        3000 Marcus Avenue, Suite 3w8
        Lake Success, NY 11042
        *Attorney for Defendants*

**WICKS,** Magistrate Judge:

Plaintiffs Lucas Carrillo Edilson, Hector Sagastume Cornel, and Ismar R. Ramirez

commenced this action against their former employer, Defendant With Pride Air Conditioning &

Heating Inc., and its owner, Defendant Michael Dolan, for allegedly failing to pay overtime

wages as required by the Fair Labor Standards Act ("FLSA") and the New York Labor Law

1

("NYLL") and for failing to provide wage statements and notices as required by NYLL. (*See generally* ECF No. 1.) Presently before the Court are Defendants' motion (1) to compel arbitration, or, in the alternative, motion to dismiss in part (ECF No. 22); and (2) for sanctions under Rule 11. (ECF No. 34.)

For the reasons that follow, the undersigned respectfully recommends that Defendants' motion to compel arbitration be granted and, in the alternative, if the District Judge declines to compel arbitration, then grant in part and deny in part Defendants' motion to dismiss. Finally, the undersigned respectfully recommends Defendants' motion for sanctions be denied.

## PROCEDURAL BACKGROUND

Plaintiffs filed the Complaint on February 23, 2026. (ECF No. 1.) On May 5, 2026, Defendants filed a motion to compel arbitration and stay litigation pending the conclusion of arbitration; alternatively, Defendants requested dismissal of all claims under the NYLL and all claims asserted by Cornel. (ECF No. 22.) Plaintiffs' opposition (ECF No. 25) and Defendants' reply (ECF No. 27) were bundle-filed the same day. The Honorable Nusrat J. Choudhury referred the motion to the undersigned for a written report and recommendation. (Electronic Order dated May 15, 2026.)

On June 19, 2026, Defendants filed a motion for sanctions against Plaintiffs and their counsel. (ECF No. 34.) Plaintiffs' opposition (ECF No. 37) and Defendants' reply (ECF No. 39) were bundle-filed the same day.

The Court held oral argument on both motions on July 8, 2026.

2

## *I*

### <u>MOTION TO COMPEL ARBITRATION</u>

**I.    Legal Framework to Compel Arbitration**

Under Section 2 of the Federal Arbitration Act ("FAA"), "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. State contract law governs the inquiry into whether a valid arbitration agreement exists. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017).

Section 4 of the FAA provides in relevant part that:

> A party aggrieved by the alleged failure ... of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Pursuant to the FAA when, "upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3.

Deeply rooted is the "liberal federal policy favoring arbitration agreements, and plac[ing] arbitration agreements on the same footing as other contracts." *Meyer*, 868 F.3d at 73 (internal quotation marks and citations omitted). The Supreme Court has repeatedly described the FAA as the embodiment of a federal policy favoring arbitration agreements. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (collecting cases). Indeed, Congress enacted the FAA to "overcome judicial resistance to arbitration" and "place[ ] arbitration agreements on equal

footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

Fundamentally, and perhaps most obvious, is that parties may only be compelled to arbitrate if in fact they have agreed to do so. *Meyer*, 868 F.3d at 73. First, the Court must determine whether a valid arbitration agreement exists between the parties. *Id.* Second, if the Court finds that a valid arbitration agreement exists between the parties, then the Court will consider whether the parties' dispute is within the scope of the arbitration agreement. *Id.* at 74.

Motions to compel arbitration under Section 4 of the FAA are analyzed under a similar standard as motions for summary judgment. *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "Allegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). However, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).

"Questions of arbitrability are generally reserved for judicial determination, including 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002)).

## II.    Should Arbitration be Compelled Here? *Yes.*

There is no dispute that the present motion to arbitrate is governed by the FAA. As such, in determining "whether claims are subject to arbitration, a court must consider (1) whether the

4

parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *Scott v. JPMorgan Chase & Co.,* 603 Fed. App'x. 33, 35 (2d Cir. 2015). The Court considers these elements in reverse order.

### A. Scope of the Arbitration Agreement

Plaintiffs assert the following causes of action: (1) failure to pay overtime wages under the FLSA; (2) failure to pay overtime wages under NYLL; (3) violation of the notice and recordkeeping requirements of NYLL §195(1); and (4) violation of the wage statements requirements of NYLL §195(3). (*See* ECF No. 1, ¶¶ 74–90.)

Under the executed Arbitration Agreement, "Employee agrees to arbitrate, and thereby agrees to waive any right to a trial by jury . . . claims arising under . . . the Fair Labor Standards Act . . . [and] New York Labor Law[.]" (ECF No 24-1.) Thus, the dispute at issue comes within the scope of the Arbitration Agreement. *See Toure v. Thunder Lube Inc.*, No. 17CV0657DLIJO, 2019 WL 4805197, at *3 (E.D.N.Y. Sept. 30, 2019) ("Plaintiff's FLSA and NYLL causes of action are arbitrable."). Indeed, Plaintiff's counsel does not dispute the scope of the Arbitration Agreement; her argument focuses on unconscionability instead. (*See* FTR log for Hearing held 07/08/2026.)

### B. Validity of the Agreement to Arbitrate

Although Plaintiffs' claims fall within the scope of the Arbitration Agreement, Plaintiffs contend that "the arbitration agreements for Mr. Edilson and Mr. Ramirez are unconscionable as the provisions of the contract, specifically the [six-month] statute of limitations (and [thirty-day] waiver) for any claims against Defendants in addition to the fee shifting provision are so outrageous and contrary to the meaning and intent of both the Fair Labor Standards Act and New

York Labor Law." (ECF No. 25 at 4.) With respect to the statutes of limitation, Plaintiffs take issue that the agreements "seek to shorten Mr. Edilson's and Mr. Ramirez's FLSA claims from three years (for willful conduct of Defendants) to a mere six months[]" while also reducing "the six-year [NYLL] statute of limitations period to a mere six-months." (*Id.* at 5–6.) With respect to fee-shifting, Plaintiffs highlight a provision that "if the employer initiates an Arbitration or asserts counterclaims against the Employee, the Employee shall be responsible for one-half of all Arbitration costs and fees associated with Employer's claims or counterclaims." (*Id.* at 9.) In Plaintiffs' estimation, this provision "preclude[s] Plaintiffs from vindicating their statutory rights as they shift a significant financial burden on Plaintiffs in the event that Defendants decide to simply bring, rather than prevail, a counterclaim against them when pursuing their protected wage-and-hour claims." (*Id.*)[1]

### i. Unconscionability Should Be Resolved by the Arbitrator, Not the Court

"[T]he general presumption is that the issue of arbitrability should be resolved by the courts"; however, courts must inquire "whether the parties agreed to submit the question of arbitrability itself to arbitration." *All. Bernstein Inv. Rsch. & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006). The FAA requires that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). The Second Circuit has held that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398

---

[1] With respect to Plaintiff Cornel, Plaintiffs raise an additional, independent reason why the arbitration agreement should not bind him: he never signed it. That argument is addressed in a separate section below.

6

F.3d 205, 208 (2d Cir. 2005). The basis of a plaintiff's challenge must "be directed specifically to the agreement to arbitrate[, as opposed to the contract as a whole,] before the court will intervene." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010).

Here, the parties themselves agreed to submit the question of arbitrability to the Arbitrator. The Arbitration Agreement provides that "any controversy, claim, or dispute that Employee has arising out of or relating to Employee's employment and/or separation of employment shall be adjudicated exclusively by" arbitration, to be "administered" and "conduct[ed]" according to "ADR's Commercial Arbitration Rules[.]" (ECF No. 24-1.) Section 6.1 of ADR Systems' Commercial Arbitration Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, validity or scope of the arbitration agreement." ADR SYSTEMS, ADR SYSTEMS COMMERCIAL ARBITRATION RULES 11 (Effective January 25, 2023), https://www.adrsystems.com/wp-content/uploads/2023/01/Commercial-Arbitration-Rules.pdf. Further, Section 6.2 states:

> The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render the arbitration clause invalid.

*Id.*

Accordingly, because the Arbitration Agreement incorporates by reference the ADR Commercial Arbitration Rules, the validity and enforceability of the Agreement is to be determined by an arbitrator.

The Supreme Court addressed this precise issue in *Rent-A-Center*, 561 U.S. 63. There, as here, the employee-plaintiff argued that the arbitration agreement was unconscionable and therefore unenforceable. *Id.* at 66. Also like here, the arbitration agreement included a provision

7

that "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* at 68. The parties and the Court referred to this as the "delegation provision." *Id.* The plaintiff did not level any challenges at the delegation provision in particular (*e.g.*, arguing that that particular provision was illegal or fraudulently induced). *Id.* at 72–73. Rather, he took issue with the arbitration agreement as a whole, as well as certain other provisions thereof (*e.g.*, that it was one-sided in the employer's benefit in certain respects). As Justice Scalia noted, "[t]his one-sided-coverage argument clearly did not go to the validity of the delegation provision." *Id.* at 73. Absent "any arguments specific to the delegation provision[,]" *id.* at 74, the Court found that provision valid, and therefore held that any questions of unconscionability as to the rest of the agreement must be decided by the arbitrator, not by the courts, *id.* at 75. So too here. *See, e.g.*, *Faith v. Khosrowshahi*, No. 21-CV-06913 (JMA) (JMW), 2023 WL 5278126, at *8 (E.D.N.Y. Aug. 16, 2023) (finding delegation clause enforceable and therefore compelling arbitration as to other disputes regarding arbitrability).

> ### ii. In the Event the District Judge Concludes that it is the Court, Not the Arbitrator, that Determines Whether the Arbitration Agreement is Unconscionable, the Two Distinct Issues May Be Severed

Should the District Judge conclude that the Court, not an arbitrator, determines whether the Arbitration Agreement is unconscionable or not, then the remedy is to sever those two clauses, namely, the statute of limitations and fee-shifting provisions.

Defendants "do not seek to shorten the FLSA statute of limitations" (ECF No. 27 at 3), as the statute of limitations reduction in the Arbitration Agreement stands "unless prohibited by law and/or statute" (*id.*, n.2). That is, Defendants concede that a provision purporting to shorten a statute of limitations under the *FLSA* is indeed unenforceable. (ECF No. 23 at 11.) Rather,

8

Defendants only contend that the Arbitration Agreement's shortened statute of limitations is enforceable *as to NYLL claims*. (ECF No.  27 at 4.)[2]

Thus, Plaintiffs' surviving arguments regarding the unconscionability of the Arbitration Agreement extend to (1) the reduction of the NYLL's statute of limitations to six months and (2) the contract's fee-shifting provision.

Plaintiffs concede that unconscionability "ordinarily" requires a showing of *both* procedural *and* substantive unconscionability (ECF No. 25 at 2); however, they rely on the assertion that the instant facts rise to the level of the "exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." (*Id.* (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824 (N.Y. 1988).)

Plaintiffs do not cite a single case that has held a shortened statute of limitations for NYLL claims to be unenforceable (*see* ECF No. 25 at 6).  Indeed, several cases considering the issue thus far have in fact held that such a shortening for NYLL claims is enforceable. *See, e.g.*, *Keller v. About, Inc.*, No. 21-CV-228 (JMF), 2021 WL 1783522, at *3 (S.D.N.Y. May 5, 2021) (noting that "[m]any courts have upheld six-month limitations periods" for claims brought under "New York statutes" including, *inter alia*, New York Labor Law). When asked at oral argument, Plaintiffs' counsel conceded she was not aware of any court that found a shortened limitations period for NYLL claims unenforceable. This Court declines to recommend that it be the first.

As for the fee-shifting, Plaintiffs argue that these provisions "preclude Plaintiffs from vindicating their statutory rights" because they could "shift a significant financial burden on Plaintiffs" in certain circumstances. (ECF No. 25 at 9.) Again, however, Plaintiffs cite no case

---

[2] Plaintiffs also take issue with a waiver provision. (ECF No. 25 at 8.) However, Defendants have agreed to waive this provision, (ECF No. 27 at 3 n.3), rendering this issue moot.

holding that such a provision is unenforceable. (*See id.*) Moreover, the fee-shifting provision applies only to actions initiated by the *employer*, so it is a "red herring" raised in the context of the instant wage claim brought by the *employees*. (ECF No. 27 at 6–7).

More fundamentally, even if certain portions of the Arbitration Agreement were unconscionable, Plaintiffs have not explained how those provisions would render the *entire* Agreement void. In *Castellanos v. Raymours Furniture Co., Inc.*, relied on by Plaintiffs, the court did not find the arbitration agreement unenforceable due to the illicit limitations provision; instead, the court simply severed that provision. 291 F. Supp. 3d 294, 301 (E.D.N.Y. 2018) (compelling arbitration). The same is true of the Arbitration Agreement's purported alteration to the FLSA and NYLL's cost-sharing provisions—even if unenforceable, it is severable. *See Crespo v. Kapnisis*, No. 21-CV-6963 (BMC), 2022 WL 2916033, at *6 (E.D.N.Y. July 25, 2022) (compelling arbitration).

Indeed, the Arbitration Agreement itself contemplates this exact solution, through an express severability clause:

> If any term or provision of this Agreement is declared illegal or unenforceable, such term or provision shall be reasonably modified by the Arbitrator to be enforceable. If not possible, said provision or term shall be null and void, but leaving the remainder of the Agreement in full force and effect.

(ECF No. 24-1 at 2.) The Agreement directly responds to Plaintiffs' unenforceability argument while providing further support of the parties' intent that an Arbitrator oversee all aspects of the Agreement. Thus, even if the limitations-shortening and fee-shifting provisions are held unconscionable, the remedy is to sever those provisions.

### iii. The Arbitration Agreement Applies to Cornel Even Though There Is No Record of His Signature

Regarding the enforceability of the Arbitration Agreement, or lack thereof, as to Cornel, Defendants assert that although "Cornel did not sign the arbitration agreement" he is "bound by

10

it" because he "continued to work after receiving [the arbitration agreement]." (ECF No. 23 at 7.)

Plaintiffs disagree, averring that "self-serving affidavits[] indicating that Mr. Cornel received the

arbitration agreement[]" are not sufficient evidence "to establish whether Mr. Cornel and

Defendants had an agreement to arbitrate." (ECF No. 25 at 10.) In response, Defendants note that

"Cornel has not submitted a declaration disputing Michael Dolan's declaration stating that

Cornel received an arbitration agreement. Cornel's denial of receiving the arbitration agreement,

through a memorandum of law, is not admissible evidence." (ECF No. 27 at 8.)

Plaintiffs' contention that "self-serving affidavits" do not count as "evidence" is

incorrect. In fact, the very case Plaintiffs rely upon emphasizes that "[i]n reviewing motions to

compel arbitration, just as for motions for summary judgment, a court must consider *all* relevant,

admissible evidence submitted by the parties and contained in pleadings, depositions, answers to

interrogatories, and admissions on file, together with *affidavits*." *Barrows v. Brinker Rest. Corp.*,

36 F.4th 45, 50 (2d Cir. 2022) (emphases in original; internal citation omitted). This is true even

where the affidavits are supposedly "self-serving." *Id.* at 51.

"Courts applying New York law have consistently required that an agreement to arbitrate

be in writing but not necessarily be signed by the party to be bound." *Ugboaja v. Perry Ave.*

*Fam. Med., Inc.*, No. 25 CIV. 78 (PAE) (OTW), 2026 WL 836190, at *6 (S.D.N.Y. Mar. 26,

2026) (citation modified; internal citation omitted). Plaintiffs and Defendants agree that it is a

settled legal principle that "an employee can manifest assent to an arbitration agreement by

continuing to work after being made aware of the agreement, without actually signing[.]" (ECF

No. 25 at 10.) *See Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) ("continued

employment, without more, is sufficient to manifest assent [to arbitration agreement]"). Because

Plaintiffs submit no evidence to controvert Defendants' affidavit that Cornel was presented with

11

the Arbitration Agreement, Cornel's continued employment constitutes a manifestation of assent to its terms.

At bottom, Cornel manifested his assent to the Arbitration Agreement, and the other two Plaintiffs signed it. Plaintiffs submit no compelling authority that any provision of the Agreement is unconscionable, but even if they did, the offending provision could simply be severed. Nor have Plaintiffs explained why an arbitrator should be any less qualified to make that determination than the Court. The undersigned therefore respectfully recommends Judge Choudhury grant Defendants' motion to compel arbitration.

Notwithstanding this recommendation that the entire matter ought to be stayed here and compelled to arbitration, the Court nevertheless considers Defendants' motion to dismiss as well, in the event Judge Choudhury disagrees with the analysis set forth above.

## *II*

## **MOTION TO DISMISS IN PART**

### I.     **Legal Standard Under Rule 12(B)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

"[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

12

U.S. at 555). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556-57 (internal citations omitted)).

When considering a motion to dismiss, the Court assumes all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required.

## II.    The Motion to Dismiss Should be Granted in Part

If the undersigned's recommendation that this matter must be arbitrated is adopted, then Defendants' motion to dismiss is moot. If, however, the District Judge disagrees with that recommendation and denies Defendants' motion to compel arbitration, then Defendants alternatively move to dismiss (i) all of Cornel's claims and (ii) Edilson and Ramirez's NYLL claims. The Court takes each argument in turn.

### A.  Claims Brought by Cornel

#### i. Cornel's FLSA Claims

Defendants assert that Cornel's claims must be dismissed because his FLSA claim is outside the two (or, if willfully violated, three) year statute of limitations. (ECF No. 23 at 10.) 29 U.S.C. § 255(a).

This action was filed February 23, 2026. (ECF No. 1.) Thus, any viable FLSA claim asserted by Plaintiffs must have occurred no earlier than February 2023. Cornel was employed

13

by Defendants from August 2018 through January 2023. (ECF No. 1 at 2.) Cornel's employment was terminated on January 17, 2023; he accepted a severance package from Defendants on January 26, 2023. (ECF No. 24-3.)

Any FLSA violation Cornel could allege is clearly outside the relevant statutory period; accordingly, his FLSA claim is time barred. *See Babayoff v. Pro Coverage Grp., Inc.*, No. 20-CV-4538 (WFK) (PK), 2024 WL 5284000, at \*3 (E.D.N.Y. Dec. 12, 2024) (granting summary judgment for defendants where the plaintiff's last payday was October 6, 2017 but he did not commence action under FLSA until October 16, 2020).

Aside from being fatally time-barred, Defendants maintain that Cornel's FLSA is in any event waived because Plaintiffs failed to respond to this argument in their opposition papers. (ECF No. 27 at 9.) "As a general matter, district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage." *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) (summary order). Thus, by failing to address Defendants' argument that Cornel's FSLA claim is time-barred, Plaintiffs have waived Cornel's FLSA claim. *See Campbell v. Whole Foods Mkt. Grp.*, 516 F. Supp. 3d 370, 393 (S.D.N.Y. 2021) ("Plaintiff has abandoned this claim by failing to brief the issue in response to Defendant's motion to dismiss.") (citing *Johnson v. City of New York*, No. 1:15-cv-8195 (GHW), 2017 WL 2312924, at \*17 (S.D.N.Y. May 26, 2017) and *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-cv-442 (TPG)(FM), 2014 WL 4723299, at \*7 (S.D.N.Y. Sept. 23, 2014)).

### ii. Cornel's NYLL Claims

Defendants argue Cornel's NYLL claims must be dismissed as well because "Cornel accepted severance pay in exchange for him providing a general release of all claims" upon his

14

termination from With Pride. (ECF No. 23 at 10.) Plaintiffs respond that "Defendants have failed to establish that the severance agreement is valid and enforceable" because Defendants did not provide Mr. Cornel a settlement agreement composed in Spanish, his primary language, which impacted Mr. Cornel's understanding of the claims release and the accompanying payment. (ECF No. 25 at 13.)

"New York courts have repeatedly ruled that even the fact that a prospective employee possesses an imperfect grasp of the English language will not relieve the employee of making a reasonable effort to have the document explained to him." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010). Thus, contrary to Plaintiffs' argument, the fact that the Agreement was not provided to Cornel in his native tongue does not render the Agreement unenforceable. *Rodriguez Depena v. Parts Auth. Inc.*, 877 F.3d 122, 124 (2d Cir. 2017) (compelling arbitration of FLSA claims, because "a language barrier does not prevent enforcement of contract obligations").

Plaintiffs also take issue with the fact that the release agreement purports to release claims without court review, making an illicit end-run around the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (ECF No. 25 at 13.) But *Cheeks* review is not required for claims brought solely under NYLL. [3] *See Abrar v. 7-Eleven, Inc.*, No. 14CV6315ADSAKT, 2016 WL 1465360, at *1 (E.D.N.Y. Apr. 14, 2016) (Spatt, J.) (approving of a "bifurcated settlement structure" whereby the parties publicly filed their FLSA settlement agreement for *Cheeks* review, and executed a separate, confidential settlement agreement for non-FLSA claims under the NYLL). To the extent Plaintiffs mean that the release

---

[3] In the event Cornel's NYLL claim survives, Defendants urge the court not to exercise supplemental jurisdiction over Cornel's state claim. (ECF No. 23 at 10.)

15

is unenforceable with respect to Cornel's *FLSA* claims, they are missing the point; Cornel's

FLSA claims are unenforceable regardless due to the statute of limitations, as discussed above.

Accordingly, Cornel's claims should be dismissed.

### B.  NYLL Claims Brought by Edilson and Ramirez

Defendants argue that all Plaintiffs' NYLL claims are untimely because the Arbitration

Agreement shortened the statute of limitations to six months, and Plaintiffs' commencement of

the instant action occurred more than six months after the respective employment of each

Plaintiff concluded. (ECF No. 23 at 10–11.) In opposition, Plaintiffs reiterate their earlier

position, namely, "Plaintiffs' NYLL claims are not time barred as the six-month statute of

limitations period in the arbitration agreements are unenforceable." (ECF No. 25 at 12.)

Defendants' position here is circular. Defendants only move to dismiss *in the alternative*,

"in the unlikely event" that the Court finds that Plaintiffs are not required to arbitrate their

claims. (ECF No. 23 at 10.) The only reason the Arbitration Agreement would be unenforceable

as to Edilson and Ramirez is if it is unconscionable. (*See generally* ECF No. 25 at 2–9 (raising

no arguments as to Edilson and Ramirez other than unconscionability).) And if it is found

unconscionable, it would only be on account of the limitations and fee-shifting provisions. (*See*

*id.*) Defendants' argument that Edilson and Ramirez's NYLL claims are time barred *because the*

*Arbitration Agreement says so* ignores that the argument is only assuming that the Arbitration

Agreement's limitations-shortening provision is invalid.

 Accordingly, if it is within the Court's domain to decide the validity of the contract and

it is determined that the statute of limitations-shortening and fee-shifting provisions are

unconscionable and render the entire contract void, then Plaintiffs' NYLL claims at this pleading

stage should be sustained. Plaintiffs brought the instant action in a timely manner. The claims

16

date from February 23, 2020, and the action was filed February 23, 2026, satisfying NYLL's six-year statute of limitations.

### III

### <u>MOTION FOR SANCTIONS UNDER RULE 11</u>

Fed. R. Civ. P. 11 in relevant part states:

> By presenting to the court a pleading, written motion, or other paper ... an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversing of existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information or belief.

Fed. R. Civ. P. 11(b).

Procedure in these circumstances is of most importance. Rule 11 requires notice and an opportunity to be heard by the party that has allegedly violated this rule. *See* Fed. R. Civ. P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.") This "notice and a reasonable opportunity to respond" provision is also known as the safe-harbor rule. *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012). If the alleged misconduct is corrected within 21 days of receiving a motion for sanctions, the motion should not be filed. *See* Fed. R. Civ. P. 11(c)(2). Here, the Court finds that Defendants followed proper procedure by providing Plaintiffs with a safe-harbor letter included with an attachment of

17

this motion for sanctions (ECF No. 21 at 3), which is not disputed by Plaintiff. Next, the undersigned reviews if sanctions are warranted.

"The implementation of Rule 11 requires a careful balancing of two interests of the court: reprimanding egregious behavior and avoiding restraint of creative legal arguing." *Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*, No. 22 CIV. 2716 (CM), 2023 WL 2346337, at *2 (S.D.N.Y. Mar. 3, 2023). "An argument constitutes a frivolous legal position for the purposes of Rule 11 sanctions if, under the objective standard of reasonableness, it is clear that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 25 (2d. Cir. 1995) (citation modified; internal citation omitted).

The decision whether to impose sanctions under Rule 11 rests firmly within the discretion of the trial court. *See Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004); *Guthrie v. Rainbow Fencing Inc.*, 349 F.R.D. 55, 72 (E.D.N.Y. 2025) (same). "Simply maintaining a claim that does not survive a motion to dismiss is not in and of itself frivolous. The appropriateness of sanctions is distinct from the underlying merits of a claim." *Bank v. CreditGuard of Am., Inc.*, No. 18-CV-1311 (PKC) (RLM), 2020 WL 1516107, at *3 (E.D.N.Y. Mar. 30, 2020) (internal citations and quotation marks omitted) (denying Rule 11 sanctions).

Defendants move for sanctions against Plaintiffs and their counsel. (ECF No. 34.) Defendants argue that sanctions are warranted because Plaintiffs pressed forward with the instant litigation despite being provided with documentary evidence proving Plaintiffs' claims are subject to arbitration, with several causes of actions being either time barred or released. (ECF No. 35 at 1.) Defendants further note that Plaintiffs refused to withdraw the Complaint even after

18

Defendants notified Plaintiffs of the Complaint's purported deficiencies through a Rule 11 safe-harbor notice. (*See generally id.*)

In response, Plaintiffs reiterate arguments used in their opposition to Defendants' motion to compel or dismiss. (*Compare* ECF No. 25, *with* ECF No. 37.) Plaintiffs aver that they meaningfully engaged with Defendants' safe-harbor notice, but "maintain their position based on legitimate legal grounds." (ECF No. 37 at 12.)

Preliminarily, monetary sanctions cannot be imposed "against a represented party for violating Rule 11(b)(2)." Fed. R. Civ. P. 11(c)(5)(A). Sanctions here, if any, would be appropriate only under Rule 11(b)(2), which involves legal contentions, as opposed to subsection (b)(1), which forbids litigation for an improper purpose such as to harass, or (c)(3), which involves factual contentions. That is to say, if Plaintiffs or their counsel violated Rule 11 in any way, it is not because they brought this action to harass or because they lied about factual matters, but rather because they assert indefensible legal contentions. Accordingly, Rule 11(c)(5)(A) directs that sanctions cannot be directed against Plaintiffs themselves. *See, e.g.*, *Moyle v. United Parcels Serv., Inc.*, No. 24-CV-3874 (CBA) (CHK), 2026 WL 1072022, at *5 (E.D.N.Y. Feb. 18, 2026) ("Plaintiff himself may not be sanctioned because he is represented by counsel and no monetary sanction may be imposed 'against a represented party for violating Rule 11(b)(2).'") (quoting Fed. R. Civ. P. 11(c)(5)(A), *report and recommendation adopted sub nom. Moyle v. United Parcel Serv., Inc.*, No. 1:24-CV-3874 (CBA) (CHK), 2026 WL 775911 (E.D.N.Y. Mar. 19, 2026)). Sanctions in this case, if any, can be directed only against counsel.

To be sure, at least some of Plaintiffs' arguments are considered colorable. For example, although the Court concluded that Cornel is bound by the Arbitration Agreement even though there is no record that he signed it, there certainly exists some colorable basis to argue otherwise.

19

Other positions taken, however, are not so clear: for example, the purported unconscionability of certain provisions of the Arbitration Agreement rendering the entire agreement unenforceable. Plaintiffs do not explain why the illicit provisions cannot be severed. This is particularly troubling because, as Defendants note (ECF No. 39 at 7–8), the Court already addressed that exact point. In Plaintiffs' brief in opposition to Defendants' motion to compel arbitration, bundle-filed on May 5, 2026, Plaintiffs cited *Castellanos* for the proposition that "arbitration provisions shortening the limitations period to bring FLSA claims are unenforceable." (ECF No. 25 at 4.) In the Court's order on Defendants' motion to stay, issued on May 19, 2026, the Court noted that *Castellanos* itself stands for the proposition that such provisions, even if unenforceable, are severable. *See Edilson v. With Pride Air Conditioning & Heating Inc.*, No. 2:26-CV-01032 (NJC) (JMW), 2026 WL 1398631, at *3 (E.D.N.Y. May 19, 2026). Nevertheless, in opposition Plaintiffs continue to rely on *Castellanos*. (ECF No. 37 at 7.) To be sure, Plaintiffs are free to disagree with this Court's reading of *Castellanos*; they could also disagree with *Castellanos* itself, arguing that it was poorly reasoned or a minority position.

Nevertheless, "even where a court determines that Rule 11(b) has been violated, the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion." *Optimus Commc'ns v. MPG Assocs., Inc.*, 841 F. Supp. 2d 722, 726 (E.D.N.Y. 2012) (Spatt, J.) (citing Fed. R. Civ. P. 11(c)(1)). In *Optimus*, like here, the plaintiffs opposed a motion to compel arbitration based on "objectively unreasonable" legal contentions. *Id.* Yet Judge Spatt declined to impose sanctions, reasoning that

> [t]he mere existence of an arbitration clause in a contract will not necessarily preclude an action at law, but requires the Court to engage in a two-step analysis to determine first, if there exists a valid contract to arbitrate, and second, whether the claims alleged fall within the scope of the arbitration clause. As this analysis may sometimes result in a conclusion that the arbitration clause is not applicable,

20

the Court does not find that the Plaintiff's arguments—although ultimately determined to be without merit—rise to the level of sanctionable conduct.

*Id.* at 726–27 (citation modified). The Court finds the reasoning in *Optimus* persuasive, and accordingly declines to recommend the imposition of sanctions on Plaintiffs' counsel.

Moreover, the Court notes that the Arbitration Agreement itself empowers the arbitrator to impose sanctions as necessary. Specifically, it provides that "the arbitrator shall have the power to award any remedies, including attorneys' fees and costs, available under applicable law." (ECF No. 24-1 at 2; *see also id.* at 3 (providing for "damages, costs, expenses and attorneys' fees" in the event a party institutes legal action instead of arbitration).) That language—"available under applicable law"—encompasses Defendants' present motion for Rule 11 sanctions. There is therefore no reason for the Court to decide the issue, it is better left to the Arbitrator. Indeed, for the Court to decide that the Complaint is frivolous under Rule 11 would be to abrogate the very power the Court has concluded belongs to the Arbitrator—namely the power to evaluate whether the Complaint states a claim.

## **CONCLUSION**

For the reasons set forth above, the undersigned respectfully recommends that Defendants' motion to compel arbitration (ECF No. 22) be granted. Alternatively, the undersigned recommends that Defendants' motion to dismiss (ECF No. 22) be granted in part and denied in part. Finally, the undersigned recommends that Defendants' motion for sanctions under Rule 11 (ECF No. 34) be denied.

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp.

21

2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147-48 (2d Cir. 2010) (summary order) (same).

Dated: Central Islip, New York
        July 9, 2026

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

22